UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Christopher H. Smith,<br>    *Plaintiff*,<br><br>          *v.*<br><br>United States of America,<br>    *Defendant*. | Civil No. 3:09cv228 (JBA)<br><br><br><br>March 7, 2011 |

RULING ON MOTION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiff Christopher Smith sued Defendant, the United States, for refund of federal income taxes, interests, and penalties assessed and collected from him by the Internal Revenue Service ("IRS"), pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422. After Defendant's concession of the only issue still in dispute on May 6, 2010, judgment entered for Plaintiff, who now seeks attorneys fees and expenses as a "prevailing party," pursuant to 26 U.S.C. § 7430. Defendant does not challenge the sum Plaintiff seeks; rather, it argues that Plaintiff is not entitled to any fees and costs, because his net worth exceeded $2 million when he commenced his lawsuit and therefore could not be a prevailing party under the statute and because the IRS's position during the litigation—denying that Plaintiff timely filed amended returns and refund claims—was substantially justified.

I.     Background

Smith is the sole shareholder of Sports Enterprises, Inc. ("SEI"), a subchapter S corporation under the Internal Revenue Code. SEI incurred losses of $12,629,282 in 1989 and $3,197,074 in 1990. Smith did not claim SEI's losses for 1989 nor 1990 on his tax returns, believing he had insufficient tax basis in his shares in SEI to do so. Then, around December 31, 1997, in reliance on the United States Tax Court holding in *Winn v.*

*Commissioner of Internal Revenue* that taxpayers could increase their basis in their stock by the amount of cancellation of indebtedness income realized by an insolvent subchapter S corporation, T.C. Memo. 1997–286, 1997 WL 344736 (June 24, 1997), Smith filed amended income tax returns, Forms 1040X, for the 1987, 1988, 1989, 1990, 1991, and 1993 returns (the "Amended Returns") and refund claims.

Over the next twelve years, Smith "unsuccessfully attempted to have the IRS act on the refund claims on multiple occasions" personally, through his accountant, and through his tax lawyers. (Smith Aff., Ex. 3 to Mem. Supp. [Doc. # 49] ¶ 2.) In 2002, the IRS audited Smith for calendar years 1995 through 1997 and discussed with him the carryforward of the same losses taken on the Amended Returns that resulted in his refund claims. The IRS accepted the validity and applicability of the losses for 1995 through 1997. (*Id.* ¶ 4.) The IRS was "aware of [Smith's] Amended Returns when [he] brought a collection due process action against the IRS in Tax Court in 2006, claiming that tax liens the IRS had placed on his property were improper because the refunds due [him] were greater than the amount the IRS claimed [he] owed." (*Id.* ¶ 5.) The IRS argued that the underlying tax liability could not be reviewed or decided in a collection due process case, and the matter was resolved by stipulation in May 2008 without resolution of his refund claims, which still had not been acted on. (*Id.*)

Because "the IRS never acted to either deny or approve [Smith's] refund claims, [he] was forced to commence this lawsuit" on February 6, 2009. In its Answer, Defendant denied that Smith filed the Amended Returns. (*See* Answer [Doc. # 17] at 5.) For the first time on December 14, 2009, Defendant notified the Court and Plaintiff in a Status Report that it is "no longer contesting the timeliness of the claims for refund at issue in this action.

However, the United States considers the action barred by res judicata and/or collateral estoppel and presently intends to file a motion on that basis." (Status Report [Doc. # 28] ¶ 1.) After Defendant filed such a motion and opposed Plaintiff's cross–motion, Defendant conceded on May 6, 2010 that Plaintiff "overpaid his federal income taxes" and that this action was not barred, and the Court consequently granted Plaintiff's motion, denied Defendant's motion, and entered judgment for Plaintiff.

II.     Discussion

Defendant argues that Plaintiff's net worth exceeded the $2 million statutory maximum to recover fees and costs and that its position during this litigation was substantially justified, until it signaled its intent to move for summary judgment on *res judicata* and/or collateral estoppel, a position it concedes was no longer substantially justified. Plaintiff counters that he is entitled to fees and costs under Section 7430 because the sum of all of his assets as of February 6, 2009 was less than $2 million, and Defendant had or could have easily and quickly obtained all of the information it needed to ascertain its obligation to pay Plaintiff's refund at the outset of this litigation.

Section 7430 is "designed to provide for the award of litigation costs to the taxpayer when the taxpayer has incurred costs in defending against an improper assessment by the IRS." *United States v. Cathcart*, 291 F. App'x 360, 363 (2d Cir. 2008) (quoting *Weiss v. Comm'r Internal Revenue*, 850 F.2d 111, 114 (2d Cir. 1998)). It provides that "[i]n any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under the title, the prevailing party may be awarded a judgment or a settlement for" reasonable costs incurred in connection with litigation and administrative proceedings

within the IRS. Section 7430(c)(4) defines "prevailing party" as any party that "has substantially prevailed with respect to the amount in controversy, or . . . has substantially prevailed with respect to the most significant issue or set of issues presented, and . . . which meets the requirements of the 1st sentence of section 2412(d)(1)(B) of tile 28," which further defines "party" as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed."

    A.    Net Worth

Defendant argues that Plaintiff has failed to demonstrate his net worth was less than $2 million when he commenced this suit. In support of his motion, Smith provided a statement of his net worth as of February 6, 2009, which he summarized in his affidavit:

> [D]uring 2009, I had no interest or dividend income, and I owned no interest in real or personal property other than what is reflected on my financial statement. My wife has been the sole owner of our residences and their contents since 1990. I have signatory authority over four bank accounts, one in my own name, one in the name of my wholly–owned Subchapter S corporation, Sports Products Marketing, Inc. d/b/a Alexander, Smith & Co. Inc., and an IOLTA and operating account for my dormant law firm, Smith & Smith, LLC. Together the accounts had an average daily cash balance of approximately $4,000 from January 2009 through the present.

(Smith Aff., Ex. 3 to Mem. Supp. at 2.)

Defendant responds that Plaintiff's initial financial statement has several shortcomings and inconsistencies; for instance, Plaintiff received distributions of $248,189 and $25,189, respectively, in 2007 and 2008 from SEI, raising questions about whether it had value as of February 2009. Further, Defendant notes that according to IRS records, a Form 1099-R distribution—from pensions, annuities, retirement or profit–sharing plans, IRAs, insurance contracts, etc.—in the amount of $16,131 was made to Plaintiff in 2005, 2006,

4

2007, 2008, and 2009, and there were additional distributions of $3,887 in 2007 and $3,945 in 2008, yet Plaintiff did not list any assets from which those distributions would be made on his financial statement. Forms 1099-B were issued in 2007 and 2008 as well, yet Plaintiff did not list stock or similar assets on his financial statement. Plaintiff has a boat registered in his name, but it is not listed on his financial statement, and Plaintiff lists a real estate mortgage of $850,000 on his financial statement, but it is unclear whether that was the original amount of the mortgage or the balance due as of February 2009. Finally, Defendant notes that Plaintiff's wife is the sole owner of their residences and their contents, and Defendant argues that if Plaintiff has financed the residences, his investment should be taken into account in the net worth calculation.

Plaintiff addressed Defendant's issues with his initial documentation of his assets in his Supplementary Affidavit [Doc. # 57]. Plaintiff avers that the net worth of SEI on February 9, 2009 was $0; the Form 1099-R distributions reflect pension payments Smith receives from EDO Corporation, where he was employed, and a 401(k) created during the nine months he was employed by Atkins Nutritionals., Inc., which had value less than $10,000, and which was cashed out prior to February 2009; Plaintiff owned stock that has been liquidated and had a total value under $15,000; the boat registered in Plaintiff's name—a 1988 Bristol 35.5 sloop in excellent condition—was owned by Plaintiff's daughters and wife and is valued at less than $85,000; Plaintiff's Fairfield, Connecticut residence, a three bedroom apartment, was purchased by Plaintiff's wife with her own funds in 2002 and encumbered by a mortgage of $295,000, in which Plaintiff had no participation; and Plaintiff's wife owns their Florida house, with a market value of $1.2 million, with an interest–only mortgage of $483,000 and a home equity line of credit for $376,000, which

Plaintiff does not explain. Thus, the record evidence in this case shows Plaintiff's worth, even including equity in the residences and boat, was less than $2 million as of February 2, 2009.

### B. Substantially justified

The United States also argues that it was substantially justified in initially refusing to refund Smith's taxes and actively litigating this action, until December 14, 2009, when it notified the Court that it intended to move for summary judgment claiming the action barred by *res judicata*, a position which Defendant now recognizes was not substantially justified.

"A party shall not be treated as the prevailing party in a proceeding . . . if the United States establishes that the position of the United States in the proceeding was substantially justified," 26 U.S.C. § 7430(c)(4)(B)(I), meaning that the United States' litigation position is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person," which is also to say that it has "a reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 553, 565 (1988). The "language of the statute places the burden squarely on the United States, not on the taxpayer, to demonstrate that the government's position was substantially justified." *See Pac. Fisheries, Inc. v. United States*, 484 F.3d 1103, 1107 (9th Cir. 2007).

After Plaintiff commenced this litigation, Defendant took the stance, ultimately abandoned on December 14, 2009, that Plaintiff never filed his Amended Returns or did not do so in a timely manner. Defendant argues, without evidentiary support, that its investigation was necessary because at the outset of its litigation, it had no record of claim for refund for any of the tax years at issue, and whether a plaintiff timely filed claims for

6

refund or credit to which he was entitled before bringing the refund suit are "fundamental issues[,] which must be addressed in every refund action." (Mem. Opp'n [Doc. # 55] at 6.)

Plaintiff offers evidence that Defendant knew or should have known from the outset of this litigation that he timely filed Amended Returns and claims for refund;[1] Defendant received Plaintiff's initial filings and therefore had records at some point in time of the Amended Returns and refund claims and documentation that they were timely filed. Further, Plaintiff repeatedly sought the refunds in light of these Amended Returns, discussed the Amended Returns with the IRS in the course of his 2002 audit, and argued in Tax Court in 2006 that because of his Amended Returns, the refunds due to him were greater than the amount the IRS claimed he owed.

Moreover, during the course of this litigation, Plaintiff's counsel made repeated efforts to provide Defendant with all necessary documentation, to which Government counsel did not respond. Madeline Grossman, Plaintiff's counsel, avers that "[o]n numerous

---

[1] Defendant maintains that its pre–litigation position, failing to respond to Plaintiff's repeated refund claims, is irrelevant to the "position of the United States," in reliance on *Pacific Fisheries*, in which the Ninth Circuit explained after analysis of the legislative history of Section 7430 that "the applicable statutory subsection pertains to 'a judicial proceeding,' not to the government's prelitigation conduct." 484 F.3d at 1108. Although Plaintiff initially argued that Defendant's prelitigation conduct, failing to act on his amended returns for twelve years, should be considered as part of the "position of the United States," he clarified in his reply that "Smith is not contending that the 'position of the United States' is one that it took prior to the litigation"; rather, "Smith contends that the conduct of the United States prior to the litigation is evidence of why its subsequent positions, taken in the litigation, were not substantially justified." (Reply [Doc. # 56] at 3.) Thus, the parties agree that Plaintiff is entitled to costs and fees only if Defendant's actions after the commencement of this lawsuit were not reasonably based in fact or law; however, in making that determination, the Court may consider "the facts . . . available at the time the IRS took its position," *see Estate of Baird v. Comm'r of Internal Revenue*, 416 F.3d 442, 447 (5th Cir. 2005), including pre–litigation actions Smith took that may have informed Defendant's conduct during the litigation.

occasions I informed counsel for the United States both orally and in writing that we would be happy to provide any documents they had been unable to locate." (Grossman Aff. [Doc. # 49–7] ¶ 11.) On June 2, 2009, Grossman emailed counsel in the Tax Division in the Department of Justice that "[w]hen we spoke on May 19, I reminded you that the government's answer was due on June 8. As I told you at that time, I am happy to assist you by providing documents you may have been unable to locate." (Ex. F to *id.*) On the same day, Grossman faxed to Government counsel a letter dated December 23, 1997, reflecting an agreement that the statute of limitations for Plaintiff to file his amended returns had been extended to December 31, 1997. (*Id.*) On August 11, 2009, Grossman again emailed Government counsel, offering to provide discovery beyond what was provided in a July 7, 2009 disclosure, in which she gave Defendant "documents evidencing, among other things, the timely filing of the Amended Returns, and Mr. Smith's repeated efforts to have the IRS act on the Amended Returns." (*Id.*; Grossman Aff. ¶ 12.) Defendant never requested additional documents until it served formal discovery requests on November 6, 2009.

Although Defendant argues in its briefing that its investigation was necessary, it offers no evidence in support of that conclusion in the context of the past history between the two parties and Plaintiff's counsel's repeated offers, leaving only one possible conclusion from the record—that Defendant failed to diligently and efficiently investigate Plaintiff's claim and ignored any benefit from Plaintiff's offers to provide all necessary documentation, which the IRS may have been unable to locate. No reasonable basis for a position exists "where there has not been a diligent investigation." *Estate of Rao v. United States*, 987 F. Supp. 249, 253 (S.D.N.Y. 1997) (the Government's position imposing a tax lien on the plaintiff estate was not substantially justified where the IRS ignored the plaintiff's repeated

8

communications for more than four years) (citing *Nicholoson v. Comm'r Internal Revenue*, 60 F.3d 1020, 1029 (3d Cir. 1995))). Thus, Defendant's position in this litigation until December 14, 2009 that Plaintiff never filed the Amended Returns, let alone in a timely fashion, was not substantially justified, and Plaintiff is entitled to attorneys fees and expenses for the entire duration of this litigaiton.

III.   Conclusion

Accordingly, Plaintiff's [Doc. # 49] Motion for Attorneys Fees and Expenses is GRANTED. Defendant does not dispute the amount of fees sought,[2] which the Court awards in full in the amount of $78,167.02. Judgment shall be entered in favor of Plaintiff in that amount.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 7th day of March, 2011.

---

[2] Plaintiff calculated fees by applying the statutory hourly rate provided with cost of living adjustments as indicated in applicable Revenue Procedures. *See* 26 U.S.C. § 7430(c)(1); Rev. Proc. 2009–50; Rev. Proc 2008–66; and Rev. Proc. 2007–66.